UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

KEVIN O'DONNELL and MICHELE O'DONNELL,

                      Plaintiffs,

    - against -

POLICE OFFICER ROBERT CARD,

                      Defendant.
-----------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 7/30/13

**OPINION AND ORDER**

11 Civ. 3297 (ER)

Appearances:

Michael Howard Sussman, Esq.
Christopher Dale Watkins, Esq.
Sussman & Watkins
Goshen, New York
*Counsel for Plaintiffs*

Hobart Joseph Simpson, Jr., Esq.
Rebecca Grace Baldwin Mantello, Esq.
Tarshis, Catania, Liberth, Mahon & Milligram
Newburgh, New York
*Counsel for Defendant*

RAMOS, D.J.:

      This case arises from actions taken by Defendant Police Officer Robert Card ("Officer Card" or "Defendant") following a motor vehicle accident between Kevin O'Donnell and Donald Blumenberg. During Officer Card's investigation of the accident, he and Plaintiff Kevin O'Donnell became embroiled in a confrontation that resulted in O'Donnell's arrest and prosecution for assault in the third degree, disorderly conduct, and resisting arrest. Kevin O'Donnell's wife, Plaintiff Michele O'Donnell, was later arrested and prosecuted for obstructing governmental administration for moving Officer Card's can of pepper spray during the confrontation. Both Kevin and Michele O'Donnell (collectively, "Plaintiffs") were acquitted of all direct charges, but Kevin O'Donnell was convicted of the lesser included offense of

attempted assault in the third degree. Plaintiffs sued Officer Card for the use of excessive force, false arrest, and malicious prosecution pursuant to 42 U.S.C. § 1983. Defendant now moves for partial summary judgment on the false arrest and malicious prosecution claims, arguing that the arrests and prosecutions were supported by probable cause and/or protected by qualified immunity. Doc. 19.[1] For the reasons discussed below, Defendant's motion is GRANTED in part and DENIED in part.

I. **Factual Background**[2]

On September 6, 2009, at approximately 2:30 p.m., Plaintiff Kevin O'Donnell ("Mr. O'Donnell") was involved in a motor vehicle accident with Donald Blumenberg ("Blumenberg") in Port Jervis, New York. Compl. ¶ 6, Doc. 1; Def.'s 56.1 Stmt. ¶ 1, Doc. 21; Pls.' Resp. 56.1 Stmt. ¶ 1, Doc. 26. Following the accident, Mr. O'Donnell called his wife, Plaintiff Michele O'Donnell ("Mrs. O'Donnell"), who promptly arrived at the scene. Compl. ¶ 8; Mantello Decl.,[3] Ex. C ("KO Dep."[4]) at 68; Sussman Affm.,[5] Ex. 2 ("MO Dep."[6]) at 47-50. The accident

---

[1] Defendant does not move for summary judgment on the claim for use of excessive force.

[2] The following facts are undisputed, unless otherwise noted. Where facts are disputed, they have been presented in the light most favorable to the non-moving party.

[3] "Mantello Decl." refers to the Attorney Declaration of Rebecca Baldwin Mantello, attorney for Defendant, in support of Defendant's motion for summary judgment. Doc. 22.

[4] "KO Dep." refers to the deposition of Mr. O'Donnell conducted on November 12, 2012. The parties each provide the Court with selected portions of the deposition of Mr. O'Donnell, and, accordingly, for the sake of clarity, the Court will generally refer to "KO Dep." regardless of whether the excerpts come from the Declaration of Rebecca Baldwin Mantello (Ex. C) or Michael Howard Sussman (Ex. 1) (*see infra* note 4).

[5] "Sussman Affm." refers to the Affirmation of Michael Howard Sussman, attorney for Plaintiffs, in opposition to Defendant's motion for summary judgment. Doc. 25.

[6] "MO Dep." refers to the deposition of Mrs. O'Donnell conducted on November 21, 2012. The parties each provide the Court with selected portions of the deposition of Mrs. O'Donnell, and, accordingly, for the sake of clarity, the Court will generally refer to "MO Dep." regardless of whether the excerpts come from the Declaration of Rebecca Baldwin Mantello (Ex. D) or Michael Howard Sussman (Ex. 2).

occurred near Gino's Restaurant. Def.'s Resp. 56.1 Stmt. ¶¶ 6-8, Doc. 27. At the request of Mr. O'Donnell, one of the individuals from Gino's Restaurant called the police following the accident. *Id.* ¶ 10. Officer Card responded to the scene. *Id.* ¶ 11.

Upon his arrival at the scene, Officer Card proceeded to determine how the accident had occurred. KO Dep. at 81. Blumenberg began to recount the incident, but Mr. O'Donnell disagreed with Blumenberg's version and twice offered his own account of the accident to Officer Card. *Id.* at 82-85. Officer Card then retrieved a pen and paper from his car in order to diagram the accident. *Id.* at 87. Upon his return, the conversation with Mr. O'Donnell became heated. *See id.* at 89. When asked by Officer Card to repeat his story for a third time, Mr. O'Donnell said to him, "I don't know how better . . . to tell you, I just told you twice," Def.'s Resp. 56.1 Stmt. ¶ 17,[7] to which Officer Card responded, "So now you want to be an asshole about it?" KO Dep. at 88. Mr. O'Donnell retorted, "I'm the asshole? You're being the asshole with your pen and paper. I just told you twice what happened." *Id.* at 89.

At that point, Officer Card pulled out his pepper spray and began to advance on Mr. O'Donnell. *Id.* at 90. Mr. O'Donnell began to retreat, but he ultimately stopped, turned his back to Officer Card, and placed his right arm above his head as though to surrender. Def.'s Resp. 56.1 Stmt. ¶ 20;[8] KO Dep. at 95. Officer Card then grabbed Mr. O'Donnell around the neck,

---

[7] Defendant contends that Mr. O'Donnell stated, "Fuck you, I already told you what happened," *see* Sussman Affm., Ex. 3 at 92, but Mr. O'Donnell maintains that he did not use the expletive until after being punched by Officer Card. *See* KO Dep. at 108.

[8] Plaintiffs deny this assertion "as stated" in their reply to Defendant's Rule 56.1 Statement. Pls.' Resp. 56.1 Stmt. ¶ 20. However, Mr. O'Donnell's deposition clearly supports Defendant's factual contention in Paragraph 20. *See* KO Dep. at 95 ("Q: So at some point as Officer Card was coming at you you stopped, you turned around and you put your left arm up— A: My right arm up. Q: —or your right arm up to surrender? A: Yes."). Accordingly, the Court deems admitted Defendant's factual allegations in Paragraph 20. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party . . . fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted."); *see also Rojas v. Roman Catholic Diocese of Rochester*,

pushed him to the ground, and discharged the pepper spray in Mr. O'Donnell's face. KO Dep. at 95-96.[9] Upon being sprayed, Mr. O'Donnell jumped[10] to his feet and saw "an arm go flying by" that "grazed the top of [his] head." *Id.* at 98-99. Mr. O'Donnell and Officer Card then threw simultaneous punches. *Id.* at 101. Upon being solidly hit by Officer Card's second punch, Mr. O'Donnell told Officer Card that he was "out of fucking control." *Id.* at 108.[11] Officer Card then began to retreat from Mr. O'Donnell and fell to the ground after tripping over his feet. MO Dep. at 94. During this altercation, Mrs. O'Donnell picked up Officer Card's can of pepper

---

783 F. Supp. 2d 381, 406-07 (W.D.N.Y. 2010), *aff'd*, 660 F.3d 98 (2d Cir. 2011), *cert. denied*, 132 S. Ct. 1744 (2012) (plaintiff's affidavit that disputes her own prior sworn testimony must be disregarded).

[9] The Defendant acknowledges that he and the Plaintiffs have a different recollection of how the altercation unfolded. However, the Court deems Plaintiffs' version of the facts admitted (as discussed *infra*) since Defendant does not clearly deny these facts in his response, but rather claims that any discrepancy is "immaterial" and fails to cite to the record. *See Costello v. N.Y. State Nurses Ass'n*, 783 F. Supp. 2d 656, 661 n.5 (S.D.N.Y. 2011) (disregarding plaintiff's responses to defendant's Rule 56.1 Statement where plaintiff responded with conclusory assertions or legal arguments); *see also* Def.'s Resp. 56.1 Stmt. at 15, 17-20, 23-25, ¶¶ 25-26, 33, 35-36, 41, 43-44, 56-59, 61, 66 ("That defendant and plaintiffs may have different versions of what transpired before and after the attempted arrest, such disparity is immaterial and has no bearing upon the ultimate issue to be decided by the Court."); *id.* at 15-19, 24-25, ¶¶ 28-32, 34, 37-40, 62-64 ("Officer Card objects to the inclusion of these facts as immaterial to his motion for partial summary judgment on plaintiffs' false arrest and malicious prosecution claims, as the above fact pertains to plaintiff Kevin O'Donnell's claim for excessive use of force. That defendant and plaintiffs may have different versions of what transpired before and after the attempted arrest, such disparity is immaterial and has no bearing upon the ultimate issue to be decided by the Court.").

[10] While Plaintiff objects to the characterization that he "jumped" to his feet, Pls.' Resp. 56.1 Stmt. ¶ 23, he used that exact term during his deposition. *See* KO Dep. at 98 ("I got sprayed and as he sprayed me he just threw the can and I jumped to my feet . . . ."); *see also Rojas*, 783 F. Supp. 2d at 406-07 (plaintiff's affidavit that disputes her own prior sworn testimony must be disregarded).

[11] Although Plaintiffs purport to deny Paragraph 19 of Defendant's 56.1 Statement, which claims that Mr. O'Donnell "called Officer Card an asshole and used the 'f-bomb,'" their response is improper as it is does not contradict Defendant's factual allegation. Plaintiffs merely attempt to provide additional details concerning the timing of Mr. O'Donnell's use of the expletives. *See* Pls.' Resp. 56.1 Stmt. ¶ 19 ("Deny, as [Officer] Card initially called [Mr. O'Donnell] an 'asshole' and [Mr. O'Donnell] did not *then* use the 'f' word." (emphasis added)); *see also Costello*, 783 F. Supp. 2d at 661 n.5 (disregarding plaintiff's responses where plaintiff failed to specifically dispute defendant's statements); *Buckman v. Calyon Secs.*, 817 F. Supp. 2d 322, 328 n.42 (S.D.N.Y. 2011) ("56.1 statements not explicitly denied by plaintiff are deemed admitted"); *Geoghan v. Long Island R.R.*, 06 Civ. 1435 (CLP), 2009 WL 982451, at **5-6 (E.D.N.Y. Apr. 9, 2009) ("Since plaintiff's response does not dispute the accuracy of the assertion, the assertion is deemed to be admitted by plaintiff for purposes of this motion.").

4

spray and placed it in a nearby flower bed. *Id.* at 87; Pls.' Resp. 56.1 Stmt. ¶ 33.[12] She testified that she believed that the altercation was over at this time. MO Dep. at 86-87. Mike Horan, an employee of Gino's restaurant, then came out of the restaurant and directed Mr. O'Donnell to get on the ground. *Id.* at 97. Hearing sirens in the background, Mr. O'Donnell complied. KO Dep. at 103. By that time, a crowd had gathered to witness the events; the crowd included Mike Horan and several women. Pls.' Resp. 56.1 Stmt. ¶ 36; MO Dep. at 95-96, 103, 124. Officer Card then asked where his pepper spray was, Def.'s Resp. 56.1 Stmt. at 22, ¶ 51, and Mrs. O'Donnell responded that she had placed it in a flower bed and returned the spray. Sussman Affm., Ex. 4 ("Card Dep."[13]) at 32.

Mr. O'Donnell was arrested that day and charged with disorderly conduct, resisting arrest, and assault in the second degree. Def.'s Resp. 56.1 Stmt. ¶ 37; *id.* at 26, ¶ 68. Approximately one week after the incident, on September 14, 2009, Mrs. O'Donnell was arrested and charged with obstructing governmental administration in the second degree in connection with her actions in picking up Officer Card's pepper spray and placing it in the flower bed. *Id.* ¶ 38; *see* MO Dep. at 86-87; Sussman Affm., Ex. 8. On March 24, 2010, the District Attorney's office reduced Mr. O'Donnell's assault charge to assault in the third degree. *Id.* ¶ 70.

On June 25, 2010, after a joint trial, Mr. O'Donnell was acquitted on the charges of disorderly conduct, resisting arrest and assault in the third degree, but was convicted of the lesser included offense of attempted assault in the third degree. *Id.* at 10, ¶¶ 39-40; Mantello Decl., Ex.

---

[12] The parties dispute whether Officer Card dropped the can in the course of the struggle or purposefully threw it away. *See* Pls.' Resp. 56.1 Stmt. at 13, ¶ 47. This distinction is irrelevant for reasons discussed below.

[13] "Card Dep." refers to the deposition of Officer Card.

5

F. Mrs. O'Donnell was acquitted of the charge of obstructing governmental administration. Def.'s Resp. 56.1 Stmt. at 10, ¶ 41. Mr. O'Donnell did not appeal his conviction of attempted assault in the third degree. *Id.* ¶ 42.

## II. Procedural History

On May 16, 2011, Plaintiffs filed suit against Officer Card alleging false arrest, malicious prosecution, and use of excessive force pursuant to 42 U.S.C. § 1983. Doc. 1. On January 14, 2013, Defendant moved for partial summary judgment on the false arrest and malicious prosecution causes of action. Doc. 19.

## III. Discussion

### a. Standard for Summary Judgment

When deciding a motion for summary judgment, the Court must "construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 126 (2d Cir. 2004)) (internal quotation marks omitted). Summary judgment may not be granted unless "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law," as demonstrated by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56. "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky*, 559 F.3d 133, 137 (2d Cir. 2009)). A "material" fact is one that might affect the

outcome of the litigation. *Id.* The moving party bears the burden of demonstrating that no genuine dispute of material fact exists. *Miner v. Clinton Cnty., N.Y.*, 541 F.3d 464, 471 (2d Cir. 2008) (citing *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 202 (2d Cir. 2007)). If the moving party meets this burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Saegner v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (quoting *Jarmillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)) (internal quotation marks omitted).

### b. Background for Section 1983

Section 1983 grants a right of action to any "citizen of the United States or other person within the jurisdiction thereof" who has been deprived of "any rights, privileges, or immunities secured by the Constitution and laws" by a person acting under color of state law. 42 U.S.C. § 1983. Plaintiffs allege five causes of action under Section 1983: (1) false arrest of Mr. O'Donnell, (2) false arrest of Mrs. O'Donnell, (3) malicious prosecution of Mr. O'Donnell, (4) malicious prosecution of Mrs. O'Donnell, and (5) excessive use of force against Mr. O'Donnell. Compl. ¶¶ 61-66.[14] In order to state a claim under Section 1983, a plaintiff must allege that: (1) a right secured by the Constitution or federal law was violated by defendants, and (2) the alleged violation was committed by a person acting under color of state law. *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999). The claims for false arrest and malicious prosecution

---

[14] Plaintiffs do not appear to assert a claim for false imprisonment. *See* Compl. ¶¶ 61-66; Def.'s Mem. L. 6 n.2. However, to the extent that Paragraph 58 of the Complaint can be construed as a claim for false imprisonment ("As a consequence of his contact with, and at the instance of, defendant [Officer] Card's false and wrongful accusations, plaintiff [Mr. O'Donnell] was arrested and held at the police station overnight and then sent to Orange County jail"), the analysis would be virtually identical to the analysis for false arrest. *See Posr v. Doherty*, 944 F.2d 91, 96 (2d Cir. 2001). Accordingly, the Court's conclusions on the claim of false arrest are applicable to a claim of false imprisonment. *See Chevalier v. City of New York*, 11 Civ. 1511 (LBS) (GWG), 2011 WL 4831197, at *2 (S.D.N.Y. Oct. 12, 2011).

implicate Plaintiffs' right to be free from unreasonable seizure as provided by the Fourth Amendment and their right to due process as guaranteed by the Fourteenth Amendment. It is undisputed that at the time of the events, Defendant was a police officer employed by the City of Port Jervis. Def.'s 56.1 Resp. Stmt. at 11, ¶ 3. Thus, Plaintiffs have stated a proper claim under Section 1983.

### c. Mr. O'Donnell's Claim for False Arrest

"In analyzing Section 1983 claims for unconstitutional false arrest, [courts in the Second Circuit] have generally looked to the law of the state in which the arrest occurred." *Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006) (citing *Davis v. Rodriguez*, 364 F.3d 424, 433 (2d Cir. 2004)) (internal quotation marks omitted). Under New York law, a plaintiff wishing to state a claim for false arrest must show that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (citing *Bernard v. U.S.*, 25 F.3d 98, 102 (2d Cir. 1994)) (internal quotation marks omitted). "[W]hen faced with a claim for false arrest, [courts] focus on the validity of the *arrest*, and not on the validity of each charge." *Davenport v. Cnty. of Suffolk*, 99 Civ. 3088 (JFB), 2007 WL 608125, at *5 (E.D.N.Y. Feb. 23, 2007) (quoting *Jaegly*, 439 F.3d at 154) (emphasis in original). "[T]he existence of probable cause is an absolute defense to a false arrest claim," *Jaegly*, 439 F.3d at 152, and a valid conviction is conclusive evidence of probable cause for the arrest. *Bowles v. State*, 37 F. Supp. 2d 608, 611 (S.D.N.Y. 1999) (citing *Heck v. Humphrey*, 512 U.S. 477, 489 (1994)) ("No claim may be brought pursuant to 42 U.S.C. § 1983 for false arrest or malicious prosecution if the plaintiff was convicted of the offense for which he was arrested."). This rule holds true even where plaintiff has been convicted of a lesser offense

than the offense for which he was initially arrested. *See, e.g.*, *Cantave v. N.Y.C. Police Officers*, 09 Civ. 2226 (CBA) (LB), 2011 WL 1239895, at *4 (E.D.N.Y. Mar. 28, 2011) (finding that a conviction for third-degree assault "d[id] not negate" probable cause for an arrest for second-degree assault).

Following his arrest, Mr. O'Donnell was convicted of the lesser included offense of attempted assault in the third degree, and he did not appeal the conviction. This conviction is conclusive evidence of probable cause for the arrest, *see Bowles*, 37 F. Supp. 2d at 611, so the Court need not examine whether there was probable cause for each acquitted charge of assault, resisting arrest, and disorderly conduct. *See Davenport*, 2007 WL 608125, at **3-5 (determining it was not necessary to establish probable cause for plaintiff's arrest for possession of marijuana where there was probable cause to arrest plaintiff for driving under the influence of drugs). While Plaintiffs argue that this conviction does not establish probable cause for the arrest, Pls.' Opp. Mem. L. 17, Doc. 24, they fail to site any legal authority in support of their position. In fact, the relevant case law is exactly to the contrary. Plaintiffs' argument wrongly conflates the claims for use of excessive force and false arrest. *See Hayes v. Cnty. of Sullivan*, 853 F. Supp. 2d 400, 430 (S.D.N.Y. 2012) (distinguishing between the validity of an arrest and the force used by police to effectuate the arrest). As stated above, regardless of whether probable cause supported any individual charge identified by the defendant, a plaintiff cannot recover where the arrest resulted in a valid conviction.[15] *See Jaegly*, 439 F.3d at 154; *see also Cantave*, 2011 WL

---

[15] Since Mr. O'Donnell's conviction bars his claim of false arrest, Plaintiffs' claims that Officer Card's "Information" reports (documents charging Mr. O'Donnell with disorderly conduct, resisting arrest, and assault) were "false" is immaterial to determining the validity of the arrest. *See* Pls.' Opp. Mem. L. at 12-13. Additionally, Plaintiffs fail to contradict the Informations with any admissible evidence in the record. *See* Pls.' Resp. 56.1 Stmt. at 15-16, ¶ 69; *see also Costello*, 783 F. Supp. 2d at 661 n.5 (disregarding plaintiff's responses to defendant's Rule 56.1 Statement where plaintiff responded with conclusory assertions or legal arguments).

1239895, at *4. Accordingly, Defendant's motion for summary judgment on Mr. O'Donnell's false arrest claim is GRANTED, and the Court need not address Officer Card's defense of qualified immunity.

### d. Mrs. O'Donnell's Claim for False Arrest

Unlike Mr. O'Donnell, Mrs. O'Donnell was not convicted of the charge brought against her or of any lesser included offense. Therefore, the Court must determine whether probable cause supported her arrest in the absence of a conviction. Probable cause is typically defined as "knowledge or reasonable trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." *Jaegly*, 439 F.3d at 152 (quoting *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)) (internal quotation marks omitted). The existence of probable cause is determined by examining "each piece of evidence" and weighing the totality of the circumstances "to evaluate whether there was probable cause to arrest." *Stansbury v. Wertman*, 12 Civ. 713, 2013 WL 3198139, at *3 (2d Cir. June 26, 2013) (citing *Panetta v. Crowley*, 460 F.3d 388, 395 (2d Cir. 2006)).

Mrs. O'Donnell was arrested for and charged with obstructing governmental administration. "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or *attempts to prevent* a public servant from performing an official function, by means of intimidation, physical force or *interference* . . . ." N.Y. Penal Law § 195.05 (emphasis added). Plaintiffs argue that Mrs. O'Donnell "neither intended to nor did she block or prevent [Officer] Card from doing anything." Pls.' Opp. Mem. L. at 21. This argument relies on the fact that Officer Card did not seek to use the pepper spray after it landed in the street, *id.*, and

on Mrs. O'Donnell's belief that the fight had ended when she moved the spray. MO Dep. at 86-87. However, it is irrelevant whether Officer Card sought to use the pepper spray after Mrs. O'Donnell moved it to the flower bed or whether he would no longer use it; the statute only requires that the offender *attempt* to prevent governmental administration, not that the offender *succeed* at preventing governmental administration. See N.Y. Penal Law § 195.05. Moreover, Mrs. O'Donnell's alleged lack of intent does not defeat probable cause. In *Richardson v. New York City Health & Hospital Corporation*, plaintiff was arrested for obstruction of governmental administration after reaching into a police officer's vehicle to remove his clipboard. 05 Civ. 6278 (RJS), 2009 WL 804096, at \*\*2-3 (S.D.N.Y. Mar. 25, 2009). Her intent was to learn the name of the officer, not necessarily to prevent him from performing an official function. *Id.* at \*2. Nevertheless, the court found probable cause for the arrest because plaintiff's "intentional and unauthorized entry into [the officer's] vehicle supported a reasonable belief based on objective facts" that plaintiff was attempting to obstruct the officer from performing an official function. *Id.* at \*9. Similarly, the undisputed fact that Officer Card knew that Mrs. O'Donnell moved the pepper spray provided a "reasonable belief based on objective facts" that she had committed the crime of obstructing governmental administration, *see* Card Dep. at 32, thus establishing probable cause for her arrest.

The case law Plaintiffs cite does not compel a different result. They rely on *People v. Greene*, 634 N.Y.S.2d 144 (N.Y. App. Div. 1995) and *People v. Lupinacci*, 595 N.Y.S.2d 76 (N.Y. App. Div. 1993) for the proposition that there was no probable cause for Mrs. O'Donnell's arrest because Officer Card was not performing an authorized function—i.e., lawfully arresting Mr. O'Donnell. *See* Pls.' Opp. Mem. L. 21. In *Greene*, defendant's conviction for obstruction of governmental administration was reversed because the jury had not been instructed to

examine whether the police officer's action in issuing a desk appearance ticket was authorized. 634 N.Y.S.2d at 144. Similarly, in *Lupinacci*, defendant's conviction for obstruction of governmental administration was reversed because the police lacked a "reasonable suspicion that the defendant was involved in criminal activity." 595 N.Y.S.2d at 76. Plaintiffs here argue that Officer Card's conduct was not authorized because Officer Card, as the aggressor, falsely arrested Kevin O'Donnell. Pls.' Opp. Mem. L. 21. However, because the Court has already found that Mr. O'Donnell's arrest was supported by probable cause, and since Mrs. O'Donnell attempted to obstruct Officer Card from effectuating the arrest, there was probable cause to arrest Mrs. O'Donnell as well.

However, even if probable cause were absent, Officer Card would be protected by the doctrine of qualified immunity. "Qualified immunity shields government officials from liability for civil damages as a result of their performance of discretionary functions, and serves to protect government officials from the burdens of costly, but insubstantial, lawsuits." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 817-18 (1982)). An arresting officer is entitled to qualified immunity "if he can establish that there was 'arguable probable cause' . . . Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.'" *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)). Here, it is undisputed that Mrs. O'Donnell removed Officer Card's pepper spray from the street and placed it in a flower bed. This act arguably made the pepper spray unavailable to him. It was therefore objectively reasonable for Officer Card to assume that he had the authority to

arrest Mrs. O'Donnell for obstructing governmental administration. Accordingly, Defendant's motion for summary judgment on Mrs. O'Donnell's false arrest claim is GRANTED.

### e. Mr. O'Donnell's Claim for Malicious Prosecution

The Defendant also challenges Plaintiffs' claims for malicious prosecution. "To establish a claim for malicious prosecution under New York law, a plaintiff must show '(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor.'" *Mitchell v. Victoria Home*, 434 F. Supp. 2d 219, 226 (S.D.N.Y. 2006) (quoting *Posr v. Court Officer Shield # 207*, 180 F.3d 409, 417 (2d Cir. 1999)). In addition to these state law elements, a plaintiff must assert that there was "a sufficient post-arraignment liberty restraint to implicate plaintiff's Fourth Amendment right[]" to be free of unreasonable seizure. *Id.* (quoting *Rohman v. N.Y.C. Transit Auth.*, 215 F.3d 208, 215 (2d Cir. 2000)) (internal quotation marks omitted). The existence of probable cause is the only element challenged by the Defendant in this motion. *See* Def.'s Mem. L. 9-14.

Probable cause is a complete defense for claims of malicious prosecution, similar to claims of false arrest. *Manganiello v. City of New York*, 612 F.3d 149, 161–62 (2d Cir. 2010) (quoting *Savino*, 331 F.3d at 72). Yet the "probable cause standard in the malicious prosecution context is slightly higher than the standard for false arrest cases." *Stansbury*, 2013 WL 3198139, at *7. For example, in contrast to the analysis for false arrest claims, a conviction on one charge does not necessarily establish probable cause for other criminal charges resolved in favor of the plaintiff. *See Janetka v. Dabe*, 892 F.2d 187, 190 (2d Cir. 1989). "[W]here, as here, the criminal prosecution has resulted in acquittal on some, but not all charges, the Court must determine whether the charges are sufficiently distinct to allow a malicious prosecution claim to proceed on

the charge for which there was an acquittal." *Pichardo v. New York Police Dept.*, 98 Civ. 429 (DLC), 1998 WL 812049, at *3 (S.D.N.Y. Nov. 18, 1998) (citing *Janetka*, 892 F.2d at 190).

To determine whether Mr. O'Donnell's conviction for attempted assault bars his claim for malicious prosecution, a Court should examine "whether the elements of each charge are different, whether one charge is a lesser included offense of the other, and whether the alleged actions were directed at different people." *Id.* Mr. O'Donnell was convicted of the lesser included offense of attempted assault in the third degree, the assault was directed at the same person who initiated the prosecution (Officer Card), and Mr. O'Donnell did not appeal this conviction. Accordingly, the Court holds that Mr. O'Donnell's claim for malicious prosecution of the assault charge is barred by his conviction for attempted assault. *See id.*

Mr. O'Donnell's conviction also bars his malicious prosecution claim regarding the charge of resisting arrest. Although attempted assault is not a lesser included offense of resisting arrest, nor do the two offenses have similar elements, the circumstances that led to the charge of resisting arrest were the same as those that led to the charge of attempted assault. Mr. O'Donnell's testimony suggests that he was aware that he was about to be placed under arrest, as he put his "right arm up to surrender." KO Dep. at 95. Whatever ambiguity may have existed at that time dissipated entirely when Officer Card attempted to subdue and arrest Mr. O'Donnell. Sometime after that point, Mr. O'Donnell jumped up and attempted to punch Officer Card. *Id.* at 97, 99. These circumstances formed the basis for both the assault and the resisting arrest charge, which were prosecuted in the same proceeding. *See* Sussman Affm., Exs. 7-8; *see, e.g.*, *Sassower v. City of White Plains, Cnty. of Westchester*, 89 Civ. 1267 (MJL), 1995 WL 222206, at *4 (S.D.N.Y. Apr. 13, 1995) (discussing *Goree v. Gunning*, 738 F. Supp. 79, 82 (E.D.N.Y. 1990), where the court dismissed claims for malicious prosecution because plaintiff's actions

were directed at one person, the arresting officer; the charges were prosecuted in a single proceeding; and, although the elements of each charge were distinct, the allegations that formed the basis of those charges all arose from plaintiff's actions directed at the officer during the officer's attempt to arrest the plaintiff). Plaintiffs in opposition attempt to compartmentalize the confrontation between Officer Card and Mr. O'Donnell in order to show that the intent to arrest Mr. O'Donnell was formed prior to Mr. O'Donnell attempting to punch Defendant, *see* Pls.' Opp. Mem. L. 18, but this portrayal is consistent with a valid charge of resisting arrest, which, by nature, must occur after an arrest is initiated.[16] Additionally, assault in the third degree and resisting arrest are both misdemeanors, so barring the malicious prosecution claim for resisting arrest does not implicate policy concerns that Officer Card may have tried to add serious charges to a minor offense that was easier to prove. *See Pichardo*, 1998 WL 812049, at *4 (quoting *DiBlasio v. City of New York*, 102 F.3d 654, 658 (2d Cir. 1996) ("When there is a significant disparity in the gravity of the offenses with which a defendant is charged, the Court must be concerned 'about the possibility of a prosecutor securing an indictment for an easily provable minor offense and adding it to more serious charges . . . .'")). Accordingly, the Court finds that the resisting arrest and assault charges are not sufficiently distinct to maintain a malicious prosecution claim for resisting arrest in light of Mr. O'Donnell's conviction for attempted assault.

However, the circumstances that led to the charge of disorderly conduct were distinct from the circumstances that formed the basis of the assault and resisting arrest charges.

---

[16] In their opposition papers, Plaintiffs also attempt to show that the charge of resisting arrest was unauthorized by stating that "Plaintiff did not walk away from the police officer seeking to arrest him [and] the police officer aggressively charged at him, flipping him over his hip and slamming him to the ground." Pls.' Opp. Mem. L. 20. However, Plaintiffs fail to cite to the record to substantiate these claims or to any legal authority.

Accordingly, the Court holds that Mr. O'Donnell's conviction for attempted assault does not bar his claim for malicious prosecution of the disorderly conduct charge. "A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof ... [she] engages in fighting or in violent, tumultuous or threatening behavior." N.Y. Penal Law § 240.20(1). To prove the crime of disorderly conduct, the prosecution must establish: (1) that the defendant's conduct was "public" in nature; (2) that the conduct was done with the intent to cause public inconvenience, annoyance or alarm, or with recklessness to a risk of such a result; and (3) that the conduct matches at least one of the descriptions set forth in the statute. *Provost v. City of Newburgh*, 262 F.3d 146, 157 (2d Cir. 2001). In his Information, Officer Card asserts that the disorderly conduct charge was based on Mr. O'Donnell's statements, "Fuck you I already told you what happened" and "What the fuck are you going to do about it," as well as on Mr. O'Donnell "flailing his arms in the air towards [Defendant] in an aggressive manner." Sussman Affm., Ex. 5. Yet the assault charge and resisting arrest charge are based on Mr. O'Donnell's actions after Defendant initiated the arrest for disorderly conduct, when Mr. O'Donnell "took a boxer style stance" and began to violently throw punches at Officer Card with a closed fist, striking him several times in the face and head. Sussman Affm., Exs. 6-7. Even Defendant acknowledges that there is a difference in the allegations that formed the basis for the charge of disorderly conduct and for the charges of assault and resisting arrest. *See* Def.'s Reply Mem. L. 3-4 ("The disorderly conduct charge arose from [Mr. O'Donnell's] use of obscene and abusive language toward Officer Card . . . The resisting arrest and attempted assault charges arose from [Mr. O'Donnell's] actions directed at Officer Card during the course of his attempts to arrest the [P]laintiff for the aforementioned disorderly conduct.").

16

In *Sassower*, plaintiff used "loud and abusive language" toward a police officer, "yelling that she wished to be arrested." 1995 WL 222206, at *4. These actions formed the basis for a charge of disorderly conduct. *Id.* During the same confrontation with the police, plaintiff walked away from the defendant police officers, and this action formed the basis for a charge of resisting arrest. *Id.* Plaintiff was subsequently convicted of resisting arrest, but was acquitted on the charge of disorderly conduct. However, the court found these actions—shouting obscenities and walking away from police officers—to be sufficiently distinct to allow a malicious prosecution claim on the acquitted charge. *Id.* Similarly, Mr. O'Donnell's charge of disorderly conduct was based on abusive language and arm "flailing," but the charge of assault was based on efforts to elude restraint by Officer Card and to punch him. *See* Sussman Affm., Exs. 5, 7. Because the circumstances that formed the basis for the charges are distinct, Mr. O'Donnell's conviction for attempted assault does not bar his claim for malicious prosecution on the disorderly conduct charge. *See Pichardo*, 1998 WL 812049, at *3.

The Court must next determine whether there was probable cause to prosecute Mr. O'Donnell's for disorderly conduct and, if not, whether Defendant was protected by qualified immunity. Based on a thorough review of the record, the Court finds that there are material issues of fact precluding summary judgment on either basis. Officer Card charged Mr. O'Donnell with disorderly conduct based on Mr. O'Donnell's yelling to Officer Card, "Fuck you I already told you what happened," "flailing his arms in the air . . . in an aggressive manner," and "stating 'what the fuck are you going to do tough guy.'" Sussman Affm., Ex. 5. However, Mr. O'Donnell specifically denies using such language prior to his arrest. KO Dep. at 108. Mr. O'Donnell maintains that he merely told the officer "I don't know how better . . . to tell you, I just told you twice." Pls.' Resp. 56.1 Stmt. ¶ 17; *see* KO Dep. at 108. These disputed exchanges

17

are material because they formed the basis for the charge of disorderly conduct. *See* Sussman Affm., Ex. 5. While Defendant cites numerous cases to support the proposition that Mr. O'Donnell's public use of obscene language created a risk of public inconvenience, which provided Officer Card with probable cause to arrest him for disorderly conduct or invoke the defense of qualified immunity, Def.'s Mem. L. 12, they are not controlling because there was no dispute in those cases that the plaintiffs used expletives prior to their arrest. *See Tobias v. Cnty. of Putnam*, 191 F. Supp. 2d 364, 374 (S.D.N.Y. 2002); *People v. Weaver*, 944 N.E.2d 634, 634 (N.Y. 2011). Moreover, case law indicates that "obscene language does not amount to 'violent, tumultuous or threatening behavior'" under N.Y. Penal Law § 240.20(1), further preventing the Court from concluding as a matter of law that Defendant had probable cause to arrest and prosecute Plaintiff for disorderly conduct. *Jackson v. City of New York*, 10 Civ. 2530 (WFK) (SMG), 2013 WL 1622165, at *9 (E.D.N.Y. Apr. 16, 2013). Accordingly, the motion for summary judgment on the claim of malicious prosecution for the charge of disorderly conduct is DENIED.

### f. Mrs. O'Donnell's Claim for Malicious Prosecution

Although Mrs. O'Donnell was not convicted of obstructing governmental administration, there was probable cause, or at least arguable probable cause for her arrest, which led to her prosecution. As discussed above, her act of placing Officer Card's pepper spray in a flower bed while he attempted to arrest Mr. O'Donnell provided a reasonable basis for Officer Card to conclude that Mrs. O'Donnell had committed the crime of obstructing governmental administration. *See Richardson*, 2009 WL 804096, at *9; *see also* N.Y. Penal Law § 195.05. The statute does not require that Mrs. O'Donnell actually obstruct Defendant from performing his official duties; she need only to have attempted to prevent Defendant from effectuating the

arrest of Mr. O'Donnell. *See* N.Y. Penal Law § 195.05 ("A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or *attempts to prevent* a public servant from performing an official function, by means of intimidation, physical force or *interference* . . . ." (emphasis added)). Also, Mrs. O'Donnell's lack of intent to obstruct an official function is irrelevant to the determination of probable cause because "the existence of probable cause is determined objectively . . . based on the totality of the circumstances." *D'Angelo-Fenton v. Town of Carmel*, 470 F. Supp. 2d 387, 394 (S.D.N.Y. 2007) (citing *Illinois v. Gates*, 462 U.S. 213, 230-32 (1983)). Defendant learned that Mrs. O'Donnell removed his pepper spray at the time of the incident, Card Dep. at 32, and, accordingly, he had probable cause to arrest her based on his objective knowledge of this fact. *See supra* Section III(d); *see also Richardson*, 2009 WL 804096, at **8-9; *Decker v. Campus*, 981 F. Supp. 851, 858 (S.D.N.Y. 1997); *People v. Tarver*, 591 N.Y.S.2d 907 (N.Y. App. Div. 1992).

      However, even if probable cause were absent, Officer Card would be protected by qualified immunity. As discussed above, it was objectively reasonable for Officer Card to assume that he had the authority to arrest Mrs. O'Donnell because there was evidence that she may have committed the crime of obstructing governmental administration by removing the pepper spray from the street thereby making it unavailable to the arresting officer. *See Escalera*, 361 F.3d at 743. Plaintiffs fail to rebut the argument of qualified immunity in their papers. *See* Pls.' Opp. Mem. L. 20-22. For this reason and those set forth above, the Court finds that there was probable cause or arguable probable cause to prosecute Mrs. O'Donnell. Accordingly, Defendant's motion for summary judgment on Mrs. O'Donnell's claim for malicious prosecution is GRANTED.

## IV. Conclusion

For the reasons set forth above, Defendant's motion for summary judgment is GRANTED in part and DENIED in part. The Court GRANTS summary judgment for Defendant on Plaintiffs' claims for: (1) false arrest of Kevin O'Donnell; (2) false arrest of Michele O'Donnell; (3) malicious prosecution of the assault charge against Kevin O'Donnell; (4) malicious prosecution of the resisting arrest charge against Kevin O'Donnell; and (5) malicious prosecution of the obstructing governmental administration charge against Michele O'Donnell. The Court DENIES summary judgment for Defendant on Plaintiffs' claim for malicious prosecution of the disorderly conduct charge against Kevin O'Donnell. Accordingly, the remaining claims for trial are (1) the malicious prosecution of the disorderly conduct charge against Kevin O'Donnell and (2) the use of excessive force during his arrest.

The Clerk of the Court is respectfully directed to terminate the pending motion. Doc. 19. The parties are instructed to file their joint pre-trial order no later than August 27, 2013 and to appear for a pre-trial conference on September 4, 2013 at 9:30 a.m., at which a final pretrial conference date and trial date will be set.

It is SO ORDERED.

Dated:    July 26, 2013
          New York, New York

_____
Edgardo Ramos, U.S.D.J.